UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

QUENTIN A. MAROZZI,

                            Plaintiff,

  v.                                                      9:25-CV-1072
                                                          (AJB/MJK)

SUPERINTENDENT OF AUBURN
CORRECTIONAL FACILITY, et al.,

                            Defendants.
_____

APPEARANCES:

QUENTIN A. MAROZZI
Plaintiff, pro se
24-B-5077
Mohawk Correctional Facility
P.O. Box 8451
Rome, NY 13440


ANTHONY J. BRINDISI
United States District Judge

## DECISION and ORDER

### I.    INTRODUCTION

Plaintiff Quentin A. Marozzi commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). By Decision and Order entered on September 10, 2025, the Court granted plaintiff's IFP Application, reviewed the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), and dismissed each of the asserted claims without prejudice for failure to

1

state a claim upon which relief may be granted. Dkt. No. 4 ("September 2025 Order"). In light of plaintiff's pro se status, he was afforded an opportunity to submit an amended complaint. *Id*. at 16-18.

Presently before the Court is plaintiff's amended complaint. Dkt. No. 6 ("Am. Compl.").

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

### A.    The Complaint and September 2025 Order

In his complaint, plaintiff asserted claims against certain individuals and groups employed at Auburn Correctional Facility based on allegations that he was denied various privileges and services during a prison labor strike. *See generally*, Compl. The complaint named the following individuals and groups as defendants: (1) the Superintendent of Auburn Correctional Facility; (2) Auburn Correctional Facility "Correctional Officers"; (3) Auburn Correctional Facility "Medical Treatment Team"; and (4) Auburn Correctional Facility "Mental Health Treatment Team." *See* Compl. at 1-3

The complaint was construed to assert the following claims against the named defendants: (1) First Amendment free exercise claims; (2) First Amendment free association claims; (3) Eighth Amendment medical indifference claims; and (4) Eighth Amendment conditions-of-confinement claims. *See* September 2025 Order at 5.

After reviewing the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court dismissed plaintiff's Section 1983 claims without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. *See* September 2025 Order at 6-18.

B.      **Review of the Amended Complaint**

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the September 2025 Order and it will not be restated in this Decision and Order.  *See* September 2025 Order at 2-4.

The amended complaint is materially similar to, albeit more detailed than, the original complaint.  The following facts are set forth as alleged in the amended complaint.

Between February 19 and May 23, 2025, plaintiff was incarcerated at Auburn Correctional Facility during a labor strike.  Am. Compl. at 12.  Prior to arriving at this facility, plaintiff was incarcerated at Groveland Correctional Facility, where he received "daily mental health meds, . . . was able to free[ly] participate in . . . Rastafaria contergation [sic] and . . . were [sic] [a] crown[,] . . . have visits[,] . . . have [a special] diet due to high blood pressure issues, . . . receive packages and commissary, . . . participate in recreational activity . . . send out mail . . . and . . . receive mail, . . . go to court when called upon, . . . have open communications with [his] attorney, . . . take showers and drink clean water, [and] . . . be protected and safe from . . . harm."  *Id.*

At some point after February 19, 2025, plaintiff submitted "multiple communication forms" and grievances to defendant Auburn Correctional Facility Superintendent Doe and defendant Religious Coordinator Doe, requesting his religious crown "that was  taken from [him] upon entering the . . . facility" and complaining about not "be[ing] able to practice [his] Rastafria [sic] religion."  Am. Compl. at 4, 10.  Plaintiff also complained to the Superintendent

and wrote grievances about a lack of access to showers, clean water, recreation, visits, packages, medication, mail, and consultation with a mental health professional.  *Id.* at 4-6.  The Superintendent and Religious Coordinator failed to respond to plaintiff's complaints, and he "was told" after his fourth grievance that "all correctional officers, all administrative staff, and most of the medical staff are on strike[.]"  *Id.* at 4, 10.

At one point, plaintiff "missed court for visitations to speak to [his] children."  Am. Compl. at 5.  On another occasion, "correctional officers 'gas[s]ed' [plaintiff] and other [inmates] when [they] were in [their] cells[,] causing [plaintiff] to choke and [his] eyes to burn to the point [he] couldn't open them[.]"  *Id.*  Although plaintiff "wrote another grievance" regarding this matter and sent it to the Superintendent, it was "never . . . addressed."  *Id.*

Plaintiff's "family and friends" attempted to visit him but were turned away at the facility and "told by a correctional officer that visits were cancled [sic] until further notice."  Am. Compl. at 6-7.  Plaintiff was also denied access to a phone to "let them know what was exactly going on" by "U.S. National Guard and the few correctional officer[s] that [were] on post."  *Id.* at 7.  At some point, plaintiff's attorneys also unsuccessfully attempted to contact him.  *Id.*  Plaintiff was denied a total of five visits between February 19 and May 23, 2025.  *Id.* at 11-12.

In addition to being deprived of outside contact, plaintiff was also denied access to "the mental meds [he] was on[.]"  Am. Compl. at 8.  Plaintiff wrote to defendant Corrections Captain John Doe, Superintendent Doe, and the "Grievance Program" regarding this deprivation and other matters, but "no one answered" plaintiff or intervened to address the wrongdoing.  *Id.* at 7-8.

4

In addition to the aforementioned officials, the amended complaint names the following groups as defendants: (1) "John Doe Correctional Officers"; (2) the Medical Treatment Facility Team; and (3) the Mental Health Facility Team. *See* Am. Compl. at 1-2.

Liberally construed, the amended complaint asserts the following Section 1983 claims: (1) First Amendment free exercise claims; (2) First Amendment free association claims; (3) Eighth Amendment medical indifference claims; (4) Eighth Amendment failure-to-protect claims; and (5) Eighth Amendment conditions-of-confinement claims.

Plaintiff seeks money damages. Am. Compl. at 13. For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

**C.   Analysis**

**1.  Group Defendants**

As with the original complaint, the amended complaint names certain groups of officials collectively as defendants.

As noted in the September 2025 Order, "naming broad groups of individuals, without any explanation as to how plaintiff interacted with any one of them, is insufficient to put any official on notice as to how or when that person may have violated plaintiff's constitutional rights." *Id*. at 7 (citations omitted).

Accordingly, and for the reasons set forth in the September 2025 Order, plaintiff's Section 1983 claims against "John Doe Correctional Officers," the Medical Treatment Facility Team, and the Mental Health Facility Team are dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2. Section 1983 Claims Against the Religious Coordinator, Superintendent, and Corrections Captain John Doe

The legal standard governing First Amendment free exercise claims, First Amendment free association claims, and Eighth Amendment deliberate indifference claims was discussed at length in the September 2025 Order and will not be restated herein. *See* September 2025 Order at 9-16.

As with the original complaint, the amended complaint does not allege that plaintiff ever spoke with the Religious Coordinator, Corrections Captain, or Superintendent of Auburn Correctional Facility at any point during the labor strike. Rather, plaintiff alleges that he wrote to these officials and forwarded them grievances on multiple occasions and never received a response. At least with respect to past incidents of harm, such as officials denying plaintiff a court visit or "gas[sing]" his cell, these allegations are insufficient to show personal involvement in the alleged wrongdoing. *See, e.g., Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"); *Braxton v. Bruen*, No. 9:17-CV-1346 (BKS/ML), 2021 WL 4950257, at *6 (N.D.N.Y. Oct. 25, 2021) ("Even before *Tangreti*, receipt by a supervisory official of a letter from an inmate, without more, has been insufficient to establish the official's personal involvement in a § 1983 constitutional claim." (collecting cases)), *vacated on other grounds by Braxton v. Bruen*, No. 21-2795, 2023 WL 7478331 (2d Cir. Nov. 13, 2023); *Tripathy v. Schneider*, No. 21-CV-6392, 2021 WL 4504461, at *3 (W.D.N.Y. Oct. 1, 2021) (dismissing Section 1983 claim against Commissioner of New York State Department of Corrections and Community Supervision and Governor of New York where complaint alleged only that these officials "failed to respond" to plaintiff's complaints of wrongdoing, noting that "the failure to respond to letters

protesting unconstitutional actions and/or requesting an investigation is, without more, insufficient to establish personal involvement"); *Brown v. Montone*, No. 17-CV-4618, 2018 WL 2976023, at *4 (S.D.N.Y. June 13, 2018) ("It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (quoting *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017)); *see also Diaz v. Bowles*, No. 20-CV-997, 2023 WL 2631809, at *3 (D. Conn. Mar. 24, 2023) ("A conclusory allegation that a defendant or defendants created a policy or custom under which unconstitutional practices occurred is insufficient to state an Eighth Amendment claim."); *Myers on behalf of Est. of Myers v. Davenport*, No. 21-CV-0922 (LEK/CFH), 2022 WL 3017367, at *5 (N.D.N.Y. July 29, 2022) ("[A] plaintiff may establish a policy-making official's personal involvement by, first, alleging facts from which it may be reasonably inferred the official was responsible for making relevant policies, and thus there is a tangible connection between their policymaking conduct and the alleged harm. . . . [and] [s]econd establish[ing] the elements of the underlying claim directly against each defendant."); *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation."); *cf*. *Burton v. Lynch*, 664 F. Supp. 2d 349, 362 (S.D.N.Y. 2009) ("A superintendent cannot 'remedy' a violation of constitutional rights which has already ceased by ordering some change in prison conditions.").[1]

---

[1] The amended complaint does not name as defendants the official(s) responsible for "gas[sing]" plaintiff's cell or denying him access to a scheduled court visit. Moreover, insofar as the court visit was canceled pursuant to a facility policy implemented during the strike, the amended complaint does not allege that this policy was unknown to plaintiff or his attorney in advance of the proceeding, or that plaintiff suffered any legal prejudice in the proceeding as a result of the missed appearance.

Further, insofar as plaintiff alleges that he was denied access to showers and clean water, the allegations in the amended complaint are entirely conclusory. Plaintiff does not, for example, indicate how many showers he missed, the reason(s) why those showers were missed, or why plaintiff believes the water suddenly become contaminated and/or unsafe to drink during the strike. *Perez v. Hawk*, 302 F. Supp. 2d 9, 22 (E.D.N.Y. 2004) (granting motion to dismiss and dismissing Eighth Amendment claim because plaintiff failed to allege a causal link between the water supply and his symptoms, and because plaintiff's "conclusory allegations with respect to the water supply fail[ed] to 'demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs' or deprive[ ] him 'of the minimal civilized measure of life's necessities' " (citing *Anderson v. Coughlin*, 757 F.2d 33, 34-35 (2d Cir. 1985))); *Dillon v. City of New York*, No. 12-CV-7113, 2013 WL 6978959, at *3 (S.D.N.Y. Nov. 18, 2013) ("Construing Plaintiff's allegations liberally, the Court reads the Complaint to suggest that the alleged deprivation of shower access occurred 'many time[s].' . . . Still, such vague and unadorned allegations must be dismissed because there is no basis on which the Court could conclude that Plaintiff has alleged plausibly that he was deprived of shower and toothpaste for a substantial period of time."); *Banks v. Argo*, No. 11-CV-4222, 2012 WL 4471585, at *4 (S.D.N.Y. Sept. 25, 2012) ("Plaintiff does not specify how long he was denied the right to shower or claim he had no other means of cleaning himself. As a result, Plaintiff's threadbare allegation must fail."). Thus, the Court has no basis to plausibly infer that the shower and water issues posed an objectively serious risk to plaintiff's health.

Similarly, insofar as plaintiff alleges that he was denied access to medications and a special diet, plaintiff does not indicate the nature of his special diet, how it differed from the

8

meals he received, the mental health medication he was prescribed, when he was prescribed the medication, or the frequency with which he was supposed to consume this medication. In the absence of such details, the Court has no basis to plausibly infer that depriving plaintiff of medications and a special diet meal posed an objectively serious risk to plaintiff's health.

Moreover, plaintiff acknowledges in his pleading that members of the National Guard, a "few" corrections officials, and some medical professionals worked at Auburn Correctional Facility during the strike. *See* Compl. at 4, 7. Yet the amended complaint does not include any facts regarding (1) when these officials made rounds during the strike, if ever, or (2) what efforts plaintiff made to communicate with these officials verbally or in writing regarding his concerns. Plaintiff also does not allege that all showers, prescribed medications and medical diets were unavailable to incarcerated individuals during the strike. Thus, the Court has no basis to plausibly infer that plaintiff was unable to clean himself or drink water, and did not receive a medical diet or prescribed medications during the labor strike as a result of deliberate indifference, by the Religious Coordinator, Corrections Captain, or Superintendent of Auburn Correctional Facility, to his well-being. *See, e.g., Hood v. Itawamba County, Miss.*, 819 F. Supp. 556, 566 (N.D. Miss. 1993) ("Evidence of understaffing, without more, is not proof of official policy." (citations omitted)); *Gagne v. City of Galveston*, 671 F. Supp. 1130, 1135 (S.D. Tex. 1987) (noting that understaffing may support a § 1983 action "only if more complete funding and staffing were possible, and ... it was the deliberate intent of the policy making official not to adequately fund and staff the jail, having in mind a gross indifference to the medical needs of ... detainees"), *aff'd*, 851 F.2d 359 (5th Cir. 1986); *Mosley v. Deperio*, No. 03-CV-6362, 2005 WL 2030738, at *4 (W.D.N.Y. Aug. 23, 2005) ("[D]eliberate indifference to inmates' health needs may be shown ... by proving that there are such

systemic and gross deficiencies in staffing ... that the inmate population is effectively denied access to adequate medical care ...."); *Clay v. D'Silva*, No. 09-CV-1245, 2011 WL 1135939, at *3 (N.D.N.Y. Feb. 1, 2011) ("The practical consequence of the state-wide shortage in dental staff for DOCS, while unfortunate, was not a product of [the Dental Services Director's] conduct and cannot be characterized as deliberate indifference on her part."), *report and recommendation adopted by* 2011 WL 1135937 (N.D.N.Y. Mar. 25, 2011).

Finally, insofar as plaintiff alleges that he was denied access to visits, outdoor recreation, packages, commissary, religious services, and mail over a period of roughly three months based on staffing issues, as with plaintiff's medical prescriptions, the Court has no basis to plausibly infer from the allegations in the amended complaint that the Religious Coordinator, Corrections Captain, or Superintendent of Auburn Correctional Facility deliberately denied plaintiff access to these privileges and services out of indifference to his well-being or religious rights, or a desire to not properly fund the prison. Rather, once again, it appears plaintiff was denied access to these privileges and services based solely on staffing and related security issues.[2]

Accordingly, and for the reasons set forth in the September 2025 Order, plaintiff's Section 1983 claims against the Religious Coordinator, Corrections Captain, and Superintendent of Auburn Correctional Facility are dismissed without prejudice pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

---

[2] As with the original complaint, the amended complaint also does not allege any facts which plausibly suggest that the privileges and services that plaintiff did not receive during the strike could have been safely provided despite an alleged labor shortage.

### D. Nature of the Dismissal

Although plaintiff was already afforded leave to amend his original complaint, the amended complaint includes new allegations of wrongdoing related to plaintiff's medical and mental health conditions, medical diet, the denial of medication, and a "gas[sing]" incident. In light of these new allegations, which do not appear to be dependent on staffing issues during the labor strike, the Court cannot "rule out any possibility" that a second amended complaint might overcome the pleading deficiencies identified herein. *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999). As a result, and in light of plaintiff's pro se status, the Court will afford him the opportunity to file a second amended complaint limited to specific incidents of wrongdoing unrelated to and/or not entirely dependent on staffing issues during the labor strike, and asserted against officials who were personally involved in such wrongdoing.

Any amended complaint filed by plaintiff must bear his original signature and must be a complete pleading. Plaintiff is forewarned that, if he fails to submit a second amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's Section 1983 claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that if plaintiff wishes to proceed with this action he must file a second amended complaint within thirty (30) days of the filing date of this Decision and Order as set forth above; and it is further

**ORDERED** that upon the filing of a second amended complaint as directed above, the Clerk shall return the file to this Court for further review; and it is further

**ORDERED** that in the event plaintiff fails to file a signed second amended complaint within thirty (30) days of the filing date of this Decision and Order, the Clerk shall enter judgment dismissing this action without prejudice for failure to state a claim upon which relief may be granted, and for failure to comply with the terms of this Decision and Order; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated: October 31, 2025
Utica, New York.

Anthony J. Brindisi
U.S. District Judge